# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Desean James Solomon (1),<br>Leontawan Lentez Holt (3), and<br>Michael Allen Burrell (4),<br><br>　　　　Defendants. | Case No. 23-cr-156<br><br><br>**ORDER** |

Esther Mignanelli, Thomas Calhoun-Lopez, Kristian Weir, and Campbell Warner, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government.

Thomas C. Plunkett, Attorney at Law, 101 East Fifth Street, Suite 1500, St. Paul, MN 55101, for Defendant Desean James Solomon.

Frederick Clayton Tyler and Karen E. Mohrlant, F. Clayton Tyler, PA, 331 Second Avenue South, Suite 230, Minneapolis, MN 55401, for Defendant Leontawan Lentez Holt.

Steven Wolter, Kelley, Wolter & Scott, P.A., 431 South Seventh Street, Suite 2530, Minneapolis, MN 554415, for Defendant Michael Allen Burrell.

SUSAN RICHARD NELSON, United States District Judge

　　This matter is before the Court on the Defendants' Joint Objection to Shackling Defendants During Trial [Doc. No. 245], Joint Objection to an Anonymous Jury [Doc. No. 246], and Joint Objection to a Courtroom Closure [Doc. No. 247]. The Court sustained the objections in part and overruled the objections in part on the record during the Final Pretrial

1

Conference on August 8, 2024. (*See* Minute Entry [Doc. No. 274].) This Order memorializes the findings made by the Court, and the reasoning for its decision.

## I. BACKGROUND

The Defendants in this case are alleged to be members and associates of a criminal enterprise, the Minneapolis Bloods street gang. (Indictment [Doc. No. 1] at 1–2, 11, 13.) Defendants Michael Allen Burrell and Leontawan Lentez Holt are each charged with one count of Using and Carrying a Firearm in Furtherance of a Crime of Violence Resulting in Death, specifically in furtherance of Murder in Aid of Racketeering. (*Id*. at 11–13.) Defendant Desean James Solomon is charged with both of those counts, as well as a third count of Racketeering Influenced and Corrupt Organizations (RICO) Conspiracy. (*Id*. at 1, 11–13.) The Defendants each face potentially significant sentences if convicted.

The Indictment alleges that the Minneapolis Bloods is a decades-old organization that controls territory in south Minneapolis. (*Id*. at 3.) It alleges that members of the Minneapolis Bloods are expected to use murder, robbery, assault, and other acts of violence to protect the power and reputation of the enterprise, to keep victims in fear, and to retaliate against rival gang members or those who would threaten the enterprise. (*Id*. at 4–6.) Members are also expected to take steps designed to impede or prevent law enforcement efforts to detect and prosecute the criminal activities of the enterprise. (*Id*. at 5, 6.)

The circumstances surrounding the two murders charged in the Indictment include, in each instance, an assault against a known rival gang member by one or more of the Defendants and uncharged associates inside an open business establishment. (Govt. Trial Br. [Doc. No. 256] at 21, 31–32.) In both instances, the assault escalated into a shootout

and ultimately the deaths of two individual victims. (*Id*. at 27–28, 35.) In addition to the two charged murders, the Government advised the Court before trial that it anticipated that the evidence would tie the Defendants, along with uncharged associates, to at least three other shootings. (*Id*. at 6–16.)

The Government has also proffered evidence that alleged members of the Minneapolis Bloods, including the Defendants, have attempted to influence, intimidate, and retaliate against witnesses who would testify against members of the gang. This evidence includes: (1) an assault by Mr. Solomon and Mr. Burrell of a person who previously testified against a member of the Minneapolis Bloods; (2) an exchange in which Mr. Solomon used another member's prior statement to accuse him of cooperating; (3) a video posted to YouTube by another member naming and threatening the witnesses who testified against him in a previous trial, and; (4) Mr. Solomon's prior conviction for witness tampering through bribery. (*Id*. at 9–11, 17–21.) The Government has further proffered multiple statements from witnesses that testifying against members of the Minneapolis Bloods causes them to fear for their safety. (Govt. Response Br. [Doc. No. 271] at 9–10.) And the Government advised the Court that it anticipated evidence at trial would establish that members of the Minneapolis Bloods, including uncharged members, are expected to threaten or retaliate against cooperators and witnesses, in order to discourage others from testifying in the future. (Govt. Trial Br. at 17, 51.)

Trial in this matter began on September 4, 2024. The Government has called a number of cooperating witnesses to testify. The United States Marshals Service advised the Court prior to trial that, given the circumstances, it could not confidently ensure the

3

safety and security of individuals in the courtroom, including witnesses, jurors, and court personnel, without the introduction of additional courtroom security measures. In light of this guidance, the Court implemented three security precautions during trial: (1) some physical restraints of the Defendants (hidden from the jury); (2) anonymizing the jury, and; (3) limiting the number of people permitted physically in the courtroom at any given time (although providing full access to real-time streaming of the trial to the public in the courthouse). The Defendants objected to all three security precautions.

## II.  DISCUSSION

### A.  Legal Standards

In implementing security measures for trial, the Court must balance the need to ensure safety and security during courtroom proceedings with the rights of the parties and the public. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970). Security measures that create "unmistakable indications of the need to separate a defendant from the community at large" are "inherently prejudicial," and courts may employ such measures only when necessary to further an essential state interest. *Hellum v. Warden, U.S. Penitentiary Leavenworth*, 28 F.3d 903, 907 (8th Cir. 1994) (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986)). While not all security measures are inherently prejudicial, the Court must always consider whether a security measure creates an "unacceptable risk of prejudice." *Holbrook*, 475 U.S. at 571. The task for the Court is to determine whether the grounds for any additional security measures, at the time the measures are taken, justify any potential prejudice which they create. *Hellum*, 28 F.3d at 907.

In the Eighth Circuit, courtroom security is considered an essential state interest, and a district court's decision regarding security measures is accorded broad discretion. *United States v. Honken*, 541 F.3d 1146, 1163 (8th Cir. 2008); *also United States v. Carter*, 815 F.2d 1230, 1232 (8th Cir. 1987) ("Although security measures may deprive a defendant of the physical indicia of innocence, generally the need for and extent of security measures during trial are within the discretion of the trial court."). Where a criminal defendant objects to the implementation of security measures, that defendant bears the burden of demonstrating that the security measures at issue are so prejudicial as to infringe on their Constitutional rights. *United States v. Darden*, 70 F.3d 1507, 1533 (8th Cir. 1995).

### B.     Leg Restraints

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). The Eighth Circuit has repeatedly affirmed trial courts' decisions to place defendants in leg restraints where they were charged with violent offenses and the restraints were not visible to the jury. *See, e.g.*, *Honken*, 541 F.3d at 1163 (citing cases); *United States v. Mahasin*, 442 F.3d 687, 691 (8th Cir. 2006). The Court is entitled to rely in part upon the expertise and experience of the U.S. Marshals Service in making its decision as to the use of physical restraints during trial. *United States v. Honken*, 378 F. Supp. 2d 1010, 1030 (N.D. Ia. 2004), *aff'd*, 541 F.3d at 1162–63; *see also United States v. Hill*, 63 F.4th 335, 345 (5th Cir. 2023) (courts may "rely heavily on the U.S. Marshals' advice in considering restraints").

Here, the Defendants are each charged with committing or aiding and abetting murders in furtherance of a criminal enterprise. The Government has set forth ample evidence of the Minneapolis Bloods' penchant for violence, and for targeting individuals who have or would testify against them or their associates. On this record, the Court is satisfied that there was no need to shackle the defendants, but there was a need for some physical restraints of the Defendants during trial. The Court ordered the use of leg restraints only (which did not prevent the Defendants from standing or walking), and relied on the expertise of the U.S. Marshals Service to ensure that the restraints were not visible to the jury at any point during the trial. The Court found that these measures, which were unknown to the jury, would not create an unacceptable risk of prejudice to the Defendants.

## C.  Anonymous Jury

Every court that has considered the issue has found that, in appropriate circumstances, "the empanelment of an anonymous jury does not infringe on the right to an impartial jury." *Darden*, 70 F.3d at 1532. The Court "has wide discretion to empanel an anonymous jury if it finds that a person's life or safety is in jeopardy, or to require the use of numbers for identification in any case." *United States v. Peoples*, 250 F.3d 630, 635 (8th Cir. 2001). Empaneling an anonymous jury is appropriate where (1) there is strong reason to believe the jury needs protection, and (2) the Court has taken reasonable precautions to minimize any prejudicial effects on the defendant. *Darden*, 70 F.3d at 1532.

The *Darden* court held that some combination of the following five factors is sufficient to establish a need for jury protection:

1) The defendant's involvement in organized crime;

6

2) The defendant's participation in a group with the capacity to harm jurors;
3) The defendant's past attempts to interfere with the judicial process;
4) The potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and;
5) Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

*Id.*; *see also United States v. Edwards*, 303 F.3d 606, 613 (5th Cir. 2002) (citing the same factors and noting that "the paradigmatic situation justifying an anonymous jury is an organized crime trial, where the safety of the jurors becomes an overriding concern").

In this case, it is alleged that the Defendants are members of an organized criminal enterprise, the Minneapolis Bloods street gang. The evidence in the record prior to trial demonstrated that the group has the capacity to interfere with the administration of justice, and to engage in violence and intimidation against those who testify against them. Mr. Solomon was previously convicted of bribing a witness. Further, each of the Defendants faces a potentially lengthy period of incarceration if convicted. On this record, the Court is satisfied that the safety of the jurors is an overriding concern and that empaneling an anonymous jury was essential for their safety in this case. The Court took reasonable measures to ensure that the Defendants were not prejudiced by this procedure, specifically by carefully instructing the potential jurors and conducting a thorough voir dire. *See Peoples*, 250 F.3d at 636.

### D.  Partial Courtroom Closure

While a defendant in a criminal matter has a right to a public trial, that right is not absolute and may be overcome by security concerns in certain circumstances. *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (per curium). Any restriction that a court places on

public access to a trial must be no broader than necessary to protect the interests at stake, must be made after reasonable alternatives are considered, and must be supported by adequate findings of fact. *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

In the Eighth Circuit, when a district court places restrictions on courtroom access that fall short of excluding the entire public from the courtroom, those restrictions are considered a partial closure. *Zornes v. Bolin*, 37 F.4th 1411, 1415 (8th Cir. 2022). A partial closure "does not implicate the same secrecy and fairness concerns that a total closure does," and may be justified by a need to protect a substantial state interest. *United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013). Accordingly, a district court's partial closure of the courtroom will not violate a defendant's Constitutional rights when the following four conditions are met:

1) There is a substantial interest likely to be prejudiced;
2) The closure is no broader than necessary to protect that interest;
3) The trial court considers reasonable alternatives to closing the proceeding; and,
4) The trial court makes findings adequate to support the closure.

*Id*.

In this case, the Court has only restricted certain access to the courtroom for the duration of the trial, but never ordered a total closure. Each party was permitted to have two individuals present in the courtroom each day (six individuals total for the defendants). The identities of those individuals were known to the Court, and court security officers checked them in daily when they entered the courthouse. Members of the media were also permitted in the courtroom. Additionally, two overflow rooms were arranged. Each overflow room had a live stream of video and audio from the courtroom, with multiple

camera angles so that anyone observing was able to see the attorneys, the Defendants, the witness testifying, and the evidence being presented.

The Court finds that its decision to implement a partial closure was sufficiently supported by the record in this case. The Court has a substantial interest in maintaining order and safety in the courtroom during a complex and high-stakes, multi-defendant criminal trial, in preventing the intimidation of testifying witnesses, and in ensuring the safety and candor of venirepersons and jurors throughout the proceedings. *See Thompson*, 713 F.3d at 396 (concerns for witness safety or intimidation are substantial interests); *United States v. Cervantes*, 706 F.3d 603, 612 (5th Cir. 2013) (concerns for the comfort and safety of jurors and potential jurors are substantial interests); *United States v. King*, 140 F.3d 76, 83 (2d Cir. 1998) (same).

Moreover, the Court finds that the partial closure, as described, was narrowly tailored and no broader than necessary to protect these substantial interests. The simultaneous video and audio access in nearby observation courtrooms ensured public access to the full proceedings, and accordingly "safeguard[ed] the values the Sixth Amendment is aimed to protect." *United States v. Hunt*, 82 F.4th 129, 141 (2d Cir. 2023) (internal citation omitted).

### III.  ORDER

Based on the submissions and the entire file and proceedings herein, and as stated previously on the record, **IT IS HEREBY ORDERED** that:

9

1. The Defendants' Joint Objection to Shackling Defendants During Trial [Doc. No. 245] is **SUSTAINED IN PART AND OVERRULED IN PART** (No shackles were used, but less restrictive leg restraints were used);

2. The Defendants' Joint Objection to an Anonymous Jury [Doc. No. 246] is **OVERRULED**; and

3. The Defendants' Joint Objection to a Courtroom Closure [Doc. No. 247] is **SUSTAINED IN PART AND OVERRULED IN PART** (The Court implemented only a partial closure of the courtroom).

**IT IS SO ORDERED.**

Dated: October 4, 2024                                       /s/ Susan Richard Nelson
                                                             SUSAN RICHARD NELSON
                                                             United States District Judge